# In the United States Court of Federal Claims

No. 08-151 C
(E-Filed under seal: April 17, 2008)[1]
(E-Filed for publication May 13, 2008)

| | |
|---|---|
| ALLIED MATERIALS & EQUIPMENT CO., INC., Plaintiff, v. THE UNITED STATES, Defendant, and ILC DOVER, LP, Defendant-Intervenor. | Post-Award Bid Protest; Cross-Motions for Judgment on the Administrative Record; RCFC 52.1; Failure to Issue Solicitation Amendment to All Parties; 48 C.F.R. § 15.206(b); No Waiver; No Showing of Prejudice Under Test of Whether Protestor "had a chance of receiving the contract award that is more than merely speculative." |

James Stephen DelSordo, Manassas, VA, for plaintiff.

Carrie A. Dunsmore, with whom were Jeffrey S. Bucholtz, Acting Assistant Attorney General, Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for defendant. Edward R. Murray, Assistant Counsel, Defense Logistics Agency, Richmond, VA, of counsel.

James J. McCullough, Washington, DC, for defendant-intervenor. Deneen J. Melander and William S. Speros, Washington, DC, of counsel.

---

[1]When this Opinion was e-filed under seal on April 17, 2008, the court afforded the opportunity to "any party [who] believes that this Opinion contains protected material that should be redacted before publication," to request, by motion, that such protected material be redacted. None of the parties requested a redaction.

OPINION

HEWITT, Judge

This is a bid protest brought by Allied Materials & Equipment Co., Inc. (Allied), an unsuccessful offeror in a procurement by the United States, acting through the Defense Logistics Agency (government or defendant or DLA), of Adapter Subassembly, Pigtail, NSN 1660-01-339-2206. Complaint for Injunctive and Declaratory Relief (plaintiff's Complaint or Compl.) ¶¶ 2, 4, 10. On March 11, 2008 plaintiff filed its Complaint, its Motion for Preliminary Injunction (plaintiff's Motion for Preliminary Injunction or Pl.'s Mot. Prelim. Inj.), and Plaintiff's Memorandum in Support of its Motion for Preliminary Injunction (plaintiff's Preliminary Injunction Memorandum or Pl.'s Prelim. Inj. Mem.). Count I of plaintiff's complaint alleges a "[v]iolation of the Terms of 41 U.S.C. § 253 and 48 CFR § 15.206." Compl. 3. Count II of plaintiff's complaint alleges a violation of DLA's implied duty of "good faith and fair dealing." Id. at 4. Plaintiff requested "the [c]ourt enjoin DLA from permitting performance of any contract under the solicitation." Id. at 5. In the alternative, plaintiff requested that the court enjoin "DLA from employing the funds obligated to the performance of any contract awarded under the solicitation to any entity other than Allied." Id. Finally, plaintiff requested that "Allied be awarded its reasonable costs and attorneys' fees and such further relief as is determined just and fair." Id. At a Telephonic Status Conference held on March 11, 2008 the parties agreed on the content of the Administrative Record (AR) and a briefing schedule. Order of Mar. 11, 2008. Defendant filed the AR on March 21, 2008. The parties also agreed that a preliminary injunction was not necessary. ILC Dover, LP (ILC), the successful offeror, joined the case as defendant-intervenor. See defendant-intervenor's Motion to Intervene, filed Mar. 18, 2008; Order of Mar. 19, 2008 (granting the Motion to Intervene).

Pursuant to the court's Order of March 11, 2008, plaintiff and defendant filed their cross-motions for summary judgment on the AR on March 28, 2008[2]. Plaintiff's Motion

[2]Defendant moves for judgment on the administrative record pursuant to Rule 52.1(b) of the Rules of the United States Court of Federal Claims (RCFC). Defendant's Motion For [Judgment] Upon the Administrative Record (defendant's Motion or Def.'s Mot.) 1. Inexplicably, plaintiff moves for judgment on the administrative record under Rule 56 of the RCFC. Plaintiff's Motion [For] Judgment on the Administrative Record (plaintiff's Motion or Pl.'s Mot.) 1. Rule 56 of the RCFC applies to motions for summary judgment, RCFC 56, and is not applicable to motions for judgment on the administrative record, see RCFC 52.1 (Rules Committee Note); see also Bannum, Inc. v. United States, 404 F.3d 1346, 1355 (Fed. Cir. 2005).
(continued...)

[2](...continued)
The court will therefore regard plaintiff's Motion as brought pursuant to RCFC 52.1.

As a general rule, when considering motions for judgment on the administrative record within the context of a bid protest proceeding, the court focuses its review on "'the administrative record already in existence.'" Al Ghanim Combined Group Co. Gen. Trad. & Cont. W.L.L. v. United States, 56 Fed. Cl. 502, 508 (2003) (quoting Camp v. Pitts, 411 U.S. 138, 142 (1973) (per curiam)). The force of the general rule that the court focuses its review on the administrative record already in existence has been strengthened both by changes in the RCFC and related Federal Circuit precedent. Effective June 20, 2006, the court adopted RCFC 52.1 to govern the filing and other aspects of proceedings to review the administrative record. See RCFC 52.1. The Rules Committee explained the rationale for RCFC 52.1 as follows:

> The rule replaces an earlier rule, RCFC 56.1, that applied certain standards borrowed from the procedure for summary judgment to review of an agency decision on the basis of an administrative record. That incorporation proved to be confusing in practice because only a portion of the summary judgment standards were borrowed. Summary judgment standards are not pertinent to judicial review upon an administrative record. See [Bannum, 404 F.3d at 1355-57]. Specifically, the now repealed Rule 56.1 did not adopt the overall standard that summary judgment might be appropriate where there were no genuine issues of material fact. See RCFC 56(c). Nonetheless, despite this omission, parties, in moving for judgment on the administrative record under the prior rule, frequently would contest whether the administrative record showed the existence of a genuine dispute of material fact. To avoid this confusion, the new rule omits any reference to summary judgment or to the standards applicable to summary judgment.
>
> . . . .
>
> The standards and criteria governing the court's review of agency decisions vary depending upon the specific law to be applied in particular cases. The rule does not address those standards or criteria.

RCFC 52.1 (Rules Committee Note).

As the Rules Committee Note states, RCFC 52.1 responded in part to the Federal Circuit's 2005 Bannum decision, where that court explained that RCFC 56.1, the predecessor rule, had in fact contemplated "trial on a paper record, allowing fact-finding by the trial court." Bannum, 404 F.3d at 1356. The Federal Circuit found that, in the context of a bid protest action, "judgment on an administrative record is properly understood as intending to provide for an expedited trial on the record." Id. The Bannum court found support for its conclusion in the text of the Administrative Disputes Resolution Act (ADRA), 28 U.S.C. § 1491(b):

(continued...)

[for] Judgment on the Administrative Record (plaintiff's Motion or Pl.'s Mot.); Plaintiff's Memorandum in Support of its Motion [for] Judgment on the Administrative Record (plaintiff's Memorandum or Pl.'s Mem.); Defendant's Motion for [Judgment] Upon the Administrative Record (defendant's Mot. or Def.'s Mot.). Along with their respective Motions, plaintiff and defendant filed statements of fact. Plaintiff's Proposed Findings of Uncontroverted Fact (plaintiff's Facts or Pl.'s Facts); Defendant's Statement of Fact (defendant's Facts or Def.'s Facts). Defendant-intervenor filed its Motion for Judgment on the Administrative Record and Memorandum of Points and Authorities in Support of Defendant-Intervenor's Motion For Judgment on the Administrative Record on March 28, 2008. Docket Entry No. 17. Pursuant to the court's Order of March 31, 2008, a Corrected Defendant Intervenor's Motion For Judgment on the Administrative Record (defendant-intervenor's Motion or Def.-Int.'s Mot.) and Corrected Memorandum of Points and Authorities in Support of Defendant-Intervenor's Motion For Judgment on the Administrative Record (defendant-intervenor's Memorandum or Def.-Int.'s Mem.) were filed on April 1, 2008. See Order of Mar. 31, 2008. On April 8, 2008 plaintiff filed Plaintiff's Opposition to Defendant's and Intervenor's Motions For Judgment on the Administrative Record (plaintiff's Response or Pl.'s Resp.) and Plaintiff's Counter-Statement of Facts (plaintiff's Response to defendant's Facts or Pl.'s Resp. to Def.'s Facts). Also on April 8, 2008, defendant filed Defendant's Opposition to Plaintiff's Motion For Judgment Upon the Administrative Record (defendant's Response or Def.'s Resp.) and Defendant's Response to Plaintiff's Proposed Findings of Uncontroverted Fact (defendant's Response to plaintiff's Facts or Def.'s Resp. to Pl.'s Facts) and defendant-intervenor filed Defendant-Intervenor's Response to Plaintiff's Motion For Judgment on the Administrative Record (defendant-interventor's Response or Def.-Int.'s Resp.). On April 10, 2008, plaintiff filed Plaintiff's Reply in Support of its Motion For Judgment on the Administrative Record (plaintiff's Reply or Pl.'s Reply), defendant filed Defendant's Reply Brief in Support of its Motion For Judgment Upon the Administrative Record (defendant's Reply or Def.'s Reply), and defendant-intervenor filed Defendant-Intervenor's Reply to Plaintiff's Opposition to Defendant's and Intervenor's Motions For Judgment on the Administrative Record (defendant-intervenor's Reply or Def.-Int.'s

---

[2](...continued)

> The statute conferring the Court of Federal Claims's jurisdiction over bid protests expressly requires the trial court to give "due regard" to "the need for expeditious resolution of the action." 28 U.S.C. § 1491(b)(3). Proceeding under RCFC 56.1 merely restricts the evidence to the agency record, as may be supplemented consistent with RCFC 56(a) or (b).

Id. The text of superseded RCFC 56.1 permitted supplementation only "by stipulation or by court order." RCFC 56.1(a) (abrogated June 20, 2006).

Reply). Defendant also filed Defendant's Response to Plaintiff's Counter Statement of Facts on April 10, 2008. On April 9, 2008, the court advised the parties by order that it would not consider material outside of the AR absent a motion to supplement. Order of Apr. 9, 2008. When the court had received no motion to supplement by the opening of oral argument on April 11, 2008, the court declared the AR closed. Transcript of Oral Argument, Apr. 11, 2008 (Oral Arg. Tr.) 8:10-20.

For the following reasons, plaintiff's Motion is DENIED and defendant's and defendant-intervenor's Motions are GRANTED.

## I. Background[3]

The Defense Supply Center Richmond (DCSR) "is a field activity of the [DLA]." Def.'s Mot. 2. On January 26, 2007[4], DSCR issued Solicitation No. SPM4A7-07-R-0408 (the Solicitation) "for the procurement of Adapter Subassembly, Pigtail, NSN 1660-01-339-2206." Pl.'s Facts 2; see AR 31. The Pigtail subassembly "is part of an adapter that allows aircraft pilots to hook their in-flight mask and helmet respiration system into ground equipment respirators before . . . takeoff [and after landing] as protection from chemical warfare agents." Def.'s Facts ¶ 1; see Oral Arg. Tr. 6:23-24.[5] The Solicitation was "for a requirements contract for a base year plus four option years with an estimated quantity of 49 per year." Id.; see AR 32. According to plaintiff, the Solicitation contemplated a maximum quantity of 485 units and a minimum of 245 units "for the base year and each of the four option years." Pl.'s Facts 2. The Solicitation included a clause explaining "that the procurement was for a part-numbered item, but allowed offerors to propose alternate products." Def.'s Facts ¶ 3 (citing AR 45-47). The Solicitation stated: "If the time before proposed award does not permit evaluation and delay of award would adversely affect the Government, alternate offers will not be considered for the current procurement." AR 46. The required delivery time was specified in the Solicitation was 216 days after the order was received. Def.'s Facts ¶ 4; AR 32. The Solicitation stated that in order to determine which proposal offered the best value to the Government the

---

[3]Facts relied on in this opinion and cited to the statements of fact or other filings of only one of the parties do not appear to be in dispute.

[4]Defendant's Statement of Fact states that the Solicitation was issued on February 27, 2007. Defendant's Statement of Fact (Def.'s Facts) ¶ 1.

[5]At oral argument held on April 11, 2008, defendant's counsel clarified that the words [and after landing] should be added and the words "and after" indicated in the text by an ellipsis should be deleted. Transcript of Oral Argument, Apr. 11, 2008 (Oral Arg. Tr.) 6:23-24.

non-price factors would be evaluated as approximately equal to price. Def.'s Facts ¶ 5; AR 48. The only non-price factor identified was past performance "which would be measured by [an Automated Best Value System (ABVS)] score." Def.'s Facts ¶ 5; see AR 48. ABVS is "an automated past performance evaluation scoring system used by DLA." Def.'s Facts ¶ 5 n.2. "The initial deadline for proposal submission was February 27, 2007." Pl.'s Facts 2; see Def.-Int.'s Mem. 3; AR 29. On February 28, 2007 DSCR issued an amendment (Amendment 1) to the Solicitation extending the deadline for proposals to March 9, 2007, AR 50, and "increas[ing] the estimated annual demand to 312," Def.'s Facts ¶ 6 (citing AR 50-54).

On March 8, 2007 Allied made an alternate offer to the Solicitation offering "a 'previously approved product' it had provided under another contract." Id. at ¶ 7 (citing AR 166). On August 20, 2007 Allied provided a technical data package, as requested by DSCR, to enable DSCR to evaluate the alternate offer. Id. at ¶ 8 (citing AR 219-302). On August 28, 2007, Stephen Allgeier, the contracting officer, "informed Allied that DSCR did not have sufficient time to evaluate Allied's alternate offer prior to award." Id. at ¶ 9 (citing AR 303). On September 7, 2007 Allied filed a bid protest with the Government Accountability Office (GAO) "alleging the DSCR decision not to evaluate its alternate offer was unreasonable." Id. at ¶ 10 (citing AR 306-55). After receiving a letter from DSCR on September 19, 2007, in which DSCR rescinded its letter of August 28, 2007, AR 356, Allied withdrew its protest, AR 360, and DSCR agreed that it "would evaluate Allied's offer [while] DSCR could make interim, fixed-quantity buys of the item to satisfy the growing backorders for the item," Def.'s Facts ¶ 11.[6]

By letter dated October 9, 2007, Allied formally requested that it be added to the solicitation as an approved source for the part-numbered item. AR 368. The request was approved by the Engineering Support Activity (ESA) on October 22, 2007. AR 372. (ESA served as the government's evaluator of technical sufficiency for the procurement. Pl.'s Facts 3; AR 370.) ESA "noted that Allied 'shall make no variation in the processes or sources used in the manufacture or assembly of these items without the consent of the cognizant engineering authority.'" Def.'s Facts ¶ 13 (quoting AR 372). "On October 31, 2007, DSCR amended the solicitation to add Allied to the item description as an approved source." Id. at ¶ 14 (citing AR 55-59). This second amendment (Amendment 2), AR 55-59, "also changed the contract from a requirements contract to an indefinite delivery, indefinite quantity contract, with a minimum base year quantity of 12, and extended the closing date for offers to November 7, 2007," Def.'s Facts ¶ 14.

---

[6]At oral argument held on April 11, 2008, defendant's counsel clarified that the word [while] should be substituted for the word "if." Oral Arg. Tr. 73:18-74:12.

On November 7, 2007 DSCR issued Amendment 3 to the Solicitation. AR 60. Amendment 3 increased "the minimum delivery quantity to 78 and established a new closing date of November 13, 2007." Pl.'s Facts 5 (citing AR 60). Allied responded on November 12, 2007 with a letter revising Allied's prices. AR 175.

On December 18, 2007, Allied informed the government by e-mail that the current supplier "quoted [Allied] a lead time of 730 days" for the hose sub-component of the Adapter Subassembly. AR 379. Allied stated that it had "a new source that could produce this item in a much shorter lead time" and inquired as to "what testing/documentation would be required in order to incorporate a new vendor." Id. Amendment 4 to the Solicitation was issued on December 19, 2007. AR 61-64. Amendment 4 "increased the estimated annual quantity from 312 to 1250, and increased the guaranteed base year minimum delivery . . . quantity to 350," Def.'s Facts ¶ 15; see AR 61-62. Amendment 4 also extended the closing date of the solicitation to December 28, 2007. AR 61. On December 20, 2007, at 7:46 a.m., Karen Harris, DSCR's contract specialist, responded to Allied's e-mail with an e-mail stating that "[t]his is a competitive item, and to allow your company to provide alternate materials is not fair to other offerors that may respond." AR 379. Ms. Harris further stated:

> We cannot hold up evaluation and award of this requirement until a decision is made about the alternate source.
>
> If you could provide information for the source you have found, it would help in the evaluation.
>
> Please keep in mind, delivery, as well as price, is an evaluation factor.

Id.

On December 20, 2007, at 4:13 p.m., Pat Lynn of ILC e-mailed Karen Harris requesting that the proposal deadline be extended to January 11, 2008 in order to allow ILC to respond to the "significant quantity changes [in Amendment 4] and . . . to obtain updated vender quotes." AR 381. It appears that Ms. Harris left the office sometime on December 20, 2007 before Mr. Lynn's e-mail reached defendant's offices. Id. at 379-82. After learning of Ms. Harris' absence, id. at 382, Mr. Lynn forwarded his request to Mr. Allgeier, the contracting officer, id. Mr. Allgeier replied to Mr. Lynn by e-mail on

December 21, 2007 stating that the "[s]olicitation has been extended as requested." Id. at 395.[7]

On December 27, 2007 Allied submitted revised pricing and advised that "Allied's base offer is premised on a delivery date which allows for the 730 days quoted by [the current supplier]." Id. at 182. Allied also provided an alternate offer for delivery within 216 days if it could use another supplier. See id. Allied identified the alternate supplier on January 7, 2008. Id. at 388.

On January 11, 2008 Pat Lynn e-mailed Karen Harris to inquire as to whether the solicitation deadline had in fact been extended to January 11, 2008 and if an official amendment was issued to reflect the extension. Id. at 394. A communication between ILC and the government later that day (January 11, 2008) (presumably over the phone because there is no document in the AR) confirmed the extension of the solicitation deadline until January 11, 2008. See Oral Arg. Tr. 33:10-20. On January 11, 2008, ILC provided DSCR with its revised pricing. AR 103-108.

Mr. Allgeier e-mailed Bill Loafman of Allied on January 23, 2008 informing him of the information ESA had requested "in order to continue with the review/evaluation," AR 397, and advised Mr. Loafman that, "if ESA does approve the alternate source, a requirement for Government First Article test must be imposed," id. Allied provided the requested technical information on January 29, 2008. AR 400-19. ESA tentatively approved Allied's offer on January 31, 2008, "pending identification of the [first article] testing facility to be used by Allied." Def.'s Facts ¶ 25 (citing AR 420). On February 4, 2008, Acquisition Specialist Andree Toon, who appears to have succeeded to Ms. Harris's role in the procurement, Oral Arg. Tr. 36:18-19, e-mailed Mr. Loafman of Allied asking him to identify the first article testing lab, id.; AR 421.

On February 11, 2008 Andree Toon e-mailed Mr. Loafman again asking him to provide the location of the first article testing lab "by the COB today." AR 422. The e-mail also requested "First Article Pricing and [Allied's] delivery for all items." Id. The e-mail also included Amendment 5 to the solicitation as an attachment and requested that Allied sign and return Amendment 5 "by COB today [February 11, 2008] also." Id.

---

[7]Amendment 5, effective December 21, 2007, extended the closing date for bids to January 11, 2008. Administrative Record (AR) 65. There is nothing in the AR that indicates when Amendment 5 was actually prepared, AR passim, or that plaintiff was ever provided a copy of or informed of the existence of Amendment 5 before February 11, 2008, id.

Amendment 5 extended the bid closing date to January 11, 2008. AR 65.[8] According to plaintiff, Ms. Toon's e-mail "was the first time that Allied had been advised of or seen Amendment 5." Pl.'s Facts 7. The court does not rely on facts advanced in the briefing of a party without support in the AR or a supplement to the AR. See supra note 2; Order of Apr. 9, 2008; Oral Arg. Tr. 8:9-22. However, plaintiff's factual allegation is completely consistent with the AR and the court credits it as properly inferable from the AR. That same day, February 11, 2008, Mr. Loafman returned a signed copy of Amendment 5 and stated that Allied's offer was based on the premise "that any First Article test costs would be borne by Allied." AR 434. Contract SPM4A7-08-D-0142 (the Contract) was awarded to ILC on February 25, 2008. Id. at 205. On February 25, 2008 Allied received notice of the award to ILC. Id. at 442-43. On February 26, 2008, counsel for Allied requested a debriefing and provided written questions. Id. at 213-15. A written debriefing was provided on February 28, 2008. Id. at 216-18. Neither the request for debriefing nor the debriefing addresses Amendment 5 to the solicitation. Id. at 213-18.

In defendant's Motion, defendant argues that plaintiff "waived its right to challenge defects in the solicitation," Def.'s Mot. 11, because it failed to raise "any concerns it had regarding Amendment 5 when it first became aware of it in February 2008, before the award was made and while Allied was still in discussions with DSCR about the solicitation," id. at 13. Defendant further argues that plaintiff was not prejudiced by any error in the issuance of Amendment 5. Id. at 14-15. Furthermore, defendant asserts that "DSCR gave Allied every opportunity to obtain the contract," id. at 18, and did not breach the duty of good faith and fair dealing, id. at 16-18. According to defendant, the court should deny plaintiff's request for a permanent injunction because it "failed to demonstrate success on the merits," id. at 18, "failed to demonstrate that it will suffer irreparable harm due to the loss of the pigtail adapter acquisition," id. at 19, and because "both the balance of harms and the public interest prongs favor denying the permanent injunction," id. at 20.

Plaintiff maintains that defendant "violated 48 C.F.R. § 15.206(c) by failing to provide notice or opportunity to respond to Amendment [5] to the RFP." Pl.'s Mot. 1. Plaintiff argues that it is entitled to a permanent injunction because it is likely that it will succeed on the merits, Pl.'s Mem. 8-9, because it will suffer irreparable harm, id. at 11-

---

[8]Defendant stated that Ms. Toon requested that Allied sign and return Amendment 5 "[t]o ensure she had a signed copy of each solicitation amendment from the offerors," Def.'s Facts ¶ 26 (emphasis added), possibly suggesting that other, unsigned, copies had been earlier in the possession of the offerors. However, the AR itself contains no support for any gloss from which it can be inferred that Allied received Amendment 5 before February 11, 2008.

12, because "the balance of harms must tilt towards the Plaintiff," id. at 12, and because granting the injunction would be in the public interest, id. at 13.

Defendant-intervenor "seeks declaratory relief and an Order finding that the [DSCR] properly awarded the contract under [the solicitation] to ILC and that plaintiff . . . waived its right to file this protest challenging the award to ILC." Def.-Int.'s Mot. 1. According to defendant-intervenor:

> Allied has waived its right to protest any alleged deficiencies in the Solicitation because Allied failed to object to such alleged deficiencies when it had an opportunity to do so before the close of the bidding process. Furthermore, Allied cannot demonstrate that any alleged deficiencies in DSCR's conduct of the Solicitation were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. Finally, even if Allied could demonstrate that DSCR's conduct was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, Allied cannot demonstrate that it has been prejudiced by such conduct.

Def.-Int.'s Mem. 2.

The court held oral argument on the parties' motions on April 11, 2008. See Oral Arg. Tr. For the following reasons, plaintiff's Motion is DENIED, and defendant's and defendant-intervenor's Motions are GRANTED.

## II. Discussion

### A. Bid Protest Standard of Review

The Tucker Act, as amended by the Administrative Disputes Resolution Act (ADRA), 28 U.S.C. § 1491(b) (2000), confers jurisdiction on this court

> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b)(1). The court reviews a bid protest action under the standards set forth in the Administrative Procedure Act (APA), 5 U.S.C. § 706. 28 U.S.C. § 1491(b)(4); NVT Techs., Inc. v. United States (NVT Techs.), 370 F.3d 1153, 1159 (Fed.

Cir. 2004). The APA provides that an agency's decision is to be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); see also Galen Med. Assocs., Inc. v. United States (Galen), 369 F.3d 1324, 1329 (Fed. Cir. 2004); Impresa Construzioni Geom. Domenico Garufi v. United States (Impresa), 238 F.3d 1324, 1332 (Fed. Cir. 2001); Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1057 (Fed. Cir. 2000).

Under the arbitrary or capricious standard of review, the court must sustain an agency's award if it has a rational basis. Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto Ins. Co. (Motor Vehicle Mfrs.), 463 U.S. 29, 43 (1983). "The arbitrary and capricious standard applicable here is highly deferential. This standard requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors." Advanced Data Concepts, 216 F.3d at 1058 (citation omitted). In particular, the reviewing court may not substitute its judgment for that of the agency. Citizens to Preserve Overton Park, Inc. v. Volpe (Overton Park), 401 U.S. 402, 416-20 (1971), abrogated in part by Califano v. Sanders, 430 U.S. 99, 105 (1977) (abrogating Overton Park by recognizing that the Administrative Procedure Act is an independent grant of subject matter jurisdiction). Moreover, in a "best value" procurement greater deference is given to the agency than "if the contract were to have been awarded on the basis of cost alone." Galen, 369 F.3d at 1330 (citing E.W. Bliss Co. v. United States, 77 F.3d 445, 449 (Fed. Cir. 1996)); see Precision Images, LLC v. United States, 79 Fed. Cl. 598, 615 (2007).

"[T]he court implements this APA standard by applying the standard as previously interpreted by the district [court in Scanwell Labs., Inc. v. Shaffer (Scanwell), 424 F.2d 859 (D.C. Cir. 1970)]."[9] Banknote Corp. of Am. v. United States, 365 F.3d 1345, 1351 (Fed. Cir. 2004). The Federal Circuit has stated that, under the APA standard applied in Scanwell, and now under the ADRA, "'a bid award may be set aside if either (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" Id. (quoting Impresa, 238 F.3d at 1332). When challenging a procurement on the ground of a regulatory violation, the protester "'must show a clear and prejudicial violation of [the] applicable statutes or regulations.'" Id. (quoting Impresa, 238 F.3d at 1333). The protester must also "show that there was a 'substantial chance' [that] it would have received the contract award absent the alleged error." Id. (quoting Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1086 (Fed. Cir. 2001)). Similarly, if an agency's decision is found to

[9]In Scanwell, the circuit court upheld the district court's review of government procurement decisions under the APA. See Scanwell Labs., Inc. v. Shaffer, 424 F.2d 859, 874-75 (D.C. Cir. 1970).

have been "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), a protestor must also show that the error was significantly prejudicial, Alfa Laval Separation, Inc. v. United States (Alfa Laval), 175 F.3d 1365, 1367 (Fed. Cir. 1999) ("To prevail in a bid protest, a protester must show a significant, prejudicial error in the procurement process." (citations omitted)). "'To establish prejudice, a protester is not required to show that but for the alleged error, the protester would have been awarded the contract.'" Id. (quoting Data General Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996)). Instead, a protester "must show that there was a 'substantial chance' it would have received the contract award but for the errors." Bannum, Inc. v. United States, 404 F.3d 1346, 1353 (Fed. Cir. 2005) (citing Info. Tech. & Applications Corp. v. United States (Info Tech.), 316 F.3d 1312, 1319 (Fed. Cir. 2003)); Alfa Laval, 175 F.3d at 1367).

The "substantial chance" test has been applied in the context of ordinary post-award bid protests. Weeks Marine, Inc. v. United States (Weeks Marine), 79 Fed. Cl. 22, 35 (2007). With respect to pre-award protests, however, there exists persuasive authority that a protestor may be required to show only "that an unreasonable agency decision 'created a non-trivial competitive injury which can be redressed by judicial relief.'" Id. (quoting WinStar Comm. Inc. v. United States, 41 Fed. Cl. 748, 763 (1998)). The different standards for pre-award and post-award relief are explained as resulting from the fact that the "substantial chance" test "envisions a review of the contract award or bid evaluation process to determine what might have occurred if the government had not erred." Id. (quoting WinStar, 41 Fed. Cl. at 763 n.9). By contrast, in a pre-award solicitation-based protest, "the evaluation of offers has not even begun." Id. (quoting WinStar, 41 Fed. Cl. at 763 n.9).

In this case, both parties have submitted complete proposals and plaintiff's only claimed injury is the possibility that it might, if afforded more time, have submitted lower prices. AR passim; Pl.'s Mem. passim. Here, where plaintiff is making a post-award, solicitation-based protest based on a defect in the solicitation of which the plaintiff was unaware until after the closing date for offers, see infra Part II.C.1-2, neither the "substantial chance" standard of Bannum, 404 F.3d at 1353, applicable to post-award protests where the protest challenges the contract award or bid evaluation occurring after the closing date for offers, nor the "non-trivial competitive injury" standard of Weeks Marine, 79 Fed. Cl. at 35, appears suitable. The situation in this case differs from that in Weeks Marine, or in WinStar, cited in Weeks Marine, both involving cases in which no evaluation of offers had begun. Weeks Marine, 79 Fed. Cl. at 23; WinStar, 41 Fed. Cl. at 750. Also, in this case, there is no allegation, as there was in Weeks Marine, that the violation of law would result in a competitive injury that could be "business threatening." Weeks Marine, 79 Fed. Cl. at 35. The court chooses to articulate a standard for the

showing of prejudice that lies between Weeks Marine, 79 Fed. Cl. at 35 (the identification of "a non-trivial competitive injury capable of being redressed by judicial relief") and Bannum, 404 F.3d at 1353 (the "substantial chance" test), and takes into account the factual development of the case afforded by the completion (albeit flawed) of the offering process and the actual evaluation of completed proposals. In these circumstances, the court will find prejudice if plaintiff demonstrates that, absent the error, it would have had a chance of receiving the contract award that is more than merely speculative. Factual findings on prejudice are to be made from the record evidence. Bannum, 404 F.3d at 1356.

The court "may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs." 28 U.S.C. § 1491 (b)(2). In deciding whether to issue a permanent injunction, "a court considers: (1) whether, as it must, the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief." PGBA, LLC v. United States, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (citing Amoco Prod. Co. v. Vill. of Gambell, Alaska, 480 U.S. 531, 546 n.12 (1987)).

B. Standing

Standing to bring a protest as an "interested party" under the ADRA is "limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." Am. Fed'n of Gov't Employees v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001). The Federal Circuit has further defined "interested party" as a party having "greater than an insubstantial chance of securing the contract if successful on the merits of the bid protest." Info. Tech., 316 F.3d at 1319. "The term 'interested parties' excludes those who did not submit proposals, bidders who withdrew from a solicitation, and offerors who were not competitively ranked for award." Microdyne Outsourcing, Inc. v. United States, 72 Fed. Cl. 230, 232 (2006) (citing Impresa, 238 F.3d at 1334).

Allied's proposal was ranked second to ILC's proposal that the government selected for award. AR 216 ("There were two offerors, ILC Dover and Allied. ILC Dover ranked number one, . . . , Allied ranked number two."). The court therefore determines that Allied is a protester whose direct economic interest was affected by the contract award to ILC. Accordingly, Allied has standing to bring this action as an interested party.

C. Motions for Judgment on the Administrative Record

This protest focuses on defendant's violations of the Federal Acquisition Regulations (FAR). Compl. 3-4; Pl.'s Mem. 8-9. The court agrees with plaintiff that there was a breach of the relevant regulations and that plaintiff's right to protest was not waived under Blue & Gold Fleet, L.P. v. United States (Blue & Gold), 492 F.3d 1308, 1314 (Fed. Cir. 2007). However, plaintiff has the burden to prove that it was prejudiced by the violation and the court finds that plaintiff has failed to carry that burden by failing to demonstrate that, absent the error, it would have had a chance of receiving the contract award that is more than merely speculative.

1. Whether the Procurement Procedure Involved a Violation of Regulation or Procedure

Under the APA "'a bid award may be set aside if either (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" Banknote Corp. of Am., 365 F.3d at 1351 (quoting Impresa, 238 F.3d at 1332). Plaintiff's protest focuses on DSCR's failure to notify plaintiff of the extension by Amendment 5 of the proposal deadline and plaintiff's inability to reduce or modify its prices as a result. Compl. 3-4. Plaintiff argues that it is a violation of the Competition in Contracting Act (CICA) and provisions of the FAR "to evaluate offers from competing companies on the basis of information not stated in the solicitation, on the basis of differing criteria, or by permitting one offeror to change its proposal without offering the same opportunity to other competitors." Compl. 4. CICA states "that contracting officers shall promote and provide for full and open competition in soliciting and awarding Government contracts," 48 C.F.R. § 6.101(a), and that under 48 C.F.R. § 15.206(b) (FAR 15.206), "[a]mendments issued before the established time and date for receipt of proposals shall be issued to all parties receiving the solicitation." Defendant contends that "[t]he administrative record is unclear as to whether Allied properly received Amendment 5, and Allied, who bears the burden of proof in this matter, cannot show that it did not actually properly receive the [amendment]." Def.'s Resp. 1-2. As indicated above, see supra note 8; supra Part I, the court finds that plaintiff's contention is correct, see also Oral Arg. Tr. passim.

Plaintiff cites to Geo-Seis Helicopters, Inc. v. United States (Geo-Seis), 77 Fed. Cl. 633 (2007), for the proposition that "it is patently improper for a procuring agency to issue [solicitation] amendments solely for the purpose of accepting either a late proposal or creating a revised proposal deadline for the benefit of one offeror." Pl.'s Mem. 8. In Geo-Seis, the Contracting Officer did not issue the amendment extending the closing date and time of the solicitation until after the date and time for receipt of final proposal

revisions. Geo-Seis, 77 Fed. Cl. at 636-37. Here, a communication indicating the existence of an amendment extending the solicitation was issued before the deadline for bids, see AR 425, making Geo-Seis inapplicable. In fact, it does not appear that either Allied or ILC received Amendment 5 in written form before February 11, 2008. See id. at passim. Instead, it appears that Allied and ILC both received Amendment 5 on February 11, 2008. Id. at 425. However, ILC received at least two e-mails that indicated the existence of such an amendment on or before January 11, 2008. Id. at 394-95. ILC was notified of the extension via e-mail on December 21, 2007, id. at 395, and followed up with an additional e-mail inquiring as to the existence of an amendment on January 11, 2008, id. at 394. The latter inquiry was apparently responded to by telephone, Oral Arg. Tr. 33:10-20, because it appears that ILC relied on the existence of Amendment 5 in submitting its proposal on January 11, 2008, there being no written reply in the AR to the e-mail sent by ILC on January 11, 2008 at 9:33 a.m. AR 394; Oral Arg. Tr. 62:24-63:1 (Defendant's counsel's concession). Because an "[a]mendment issued before the established time and date for receipt of proposals," 48 C.F.R. § 15.206(b), was not "issued to all parties receiving the solicitation," id., the court agrees with plaintiff that defendant acted in violation of 48 C.F.R. § 15.206(b).

2. Whether Plaintiff Waived its Right to Protest

According to defendant, "[t]he Government is entitled to judgment upon the administrative record because Allied waived its right to challenge defects in the solicitation." Def.'s Mot. 11. Defendant and defendant-intervenor both cite to Blue & Gold, 492 F.3d at 1314, as support for this proposition. Def.'s Mot. 11-12; Def.-Int.'s Mem. 7. In Blue & Gold, the Federal Circuit recognized a "waiver rule" that "a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection afterwards in a § 1491(b) action in the Court of Federal Claims." Blue & Gold, 492 F.3d at 1315. The Federal Circuit stated its rationale for the "waiver rule" as follows:

> It would be inefficient and costly to authorize this remedy after offerors and the agency had expended considerable time and effort submitting or evaluating proposals in response to a defective solicitation. Vendors cannot sit on their rights to challenge what they believe is an unfair solicitation, roll the dice and see if they receive [an] award and then, if unsuccessful, claim the solicitation was infirm.

Id. at 1314 (citation omitted). Defendant argues that "Allied should have raised any concerns it had regarding Amendment 5 when it first became aware of it in February

2008, before the award was made and while Allied was still in discussions with DSCR about the solicitation." Def.'s Mot. 13. As defendant points out, Allied did not raise an objection to its late receipt of Amendment 5 when it was notified of the Amendment on February 11, 2008 and it did not at any time "request more time to amend its price." Id. at 13. Defendant-intervenor also relies on the fact that Allied did not file its protest in the Court of Federal Claims until March 11, 2008, Compl. 1, "a full month after it became aware of the grounds for its protest and over two weeks after contract award," Def.-Int.'s Mem. 10.

According to defendant-intervenor, "[t]he bidding process for the procurement was complete on February 11, 2008, when DSCR requested both offerors to sign and return certain previously issued amendments that lacked acknowledgment signatures." Id. at 9. Defendant-intervenor further argues that even if February 11, 2008 is not established as the close of the bidding process, "Allied nevertheless waived its right to file this bid protest." Id. at 9-10 (asserting that "[u]nder [Blue & Gold], Allied was obligated to challenge, or at least seek clarification of, Amendment [5] when it received the amendment by e[-]mail from DSCR on February 11, 2008"). Defendant-intervenor notes that "on February 21, 2008, ten days after he signed and acknowledged receipt of Amendment [5] without objection, Mr. Loafman of Allied emailed DSCR and asked the Agency to 'provide an update as to the status of the solicitation and any time frame in which an award is now contemplated.'" Id. at 10 (quoting AR 441). "Allied was not contemplating a challenge to the terms of the procurement. Rather, Allied was waiting to see whether it would be the successful offeror under the updated terms of the Solicitation, including Amendment [5]'s extension of the proposal submission date to January 11, 2008." Id.

Defendant's and defendant-intervenor's argument relies on a novel interpretation of the phrase "the close of the bidding process" in Blue & Gold, 492 F.3d at 1315, an interpretation which the court believes unmoors the phrase "the close of the bidding process" from the relevant procurement law anchors. Blue & Gold has been consistently interpreted as standing for the proposition that "[t]he proper time to challenge the provisions of a prospectus is before bids are required to be submitted." Frazier v. United States, 79 Fed. Cl. 148, 177 (2007) (citing Blue & Gold, 492 F.3d at 1315); see Benchmade Knife Co. v. United States, 79 Fed. Cl. 731, 733 (2007) (finding that the protest "should have been raised before proposals were submitted"); Erinys Iraq Ltd. v. United States, 78 Fed. Cl. 518, 533 n.7 (2007) ("The Federal Circuit established that challenges to the terms of a solicitation must be raised prior to the closing date for receipt of proposals." (citation omitted)). Plaintiff argues that because "Allied had no knowledge of Amendment [5] until after January 11, 2008 (the last date for submission of proposals), Allied could not have [had] knowledge of any defect until after the close of the bidding

process." Pl.'s Resp. 4. The court agrees with plaintiff that Allied's failure to raise its claim prior to the closing of the bidding process did not constitute a waiver. Amendment 5 extended the deadline for bids until January 11, 2008. AR 425. Moreover it is clear to the court that defendant failed to provide Amendment 5 to plaintiff at the same time it provided Amendment 5 to ILC. This failure violated a significant rule of competition designed to ensure fairness, 48 C.F.R. § 15.206(b), and is "capable of being redressed by judicial relief," see Weeks Marine, 79 Fed. Cl. at 35, by, for example, setting aside the award.

Allied and the contracting officials continued to explore the viability of Allied's alternate offer after December 28, 2007 and even after January 11, 2008, but there is no suggestion that there is a new deadline for bids after December 28, 2007. See AR 420-26. Allied's alternate offer was approved on January 31, 2008 by way of an e-mail from Lieutenant Alexander Annen at Brooks Air force Base to Christine Bowen of DSCR, id. at 420, and Andree Toon informed Mr. Loafman of the approval on February 4, 2008, id. at 421. Ms. Toon requested additional information from Allied on February 11, 2008 in the same e-mail in which she transmitted Amendment 5, id. at 426, to which Mr. Loafman responded that same day (February 11, 2008), id. at 434. Because Allied "lacked knowledge of the alleged defect in the solicitation until after the close of bidding," Allied "did not fail 'to raise [its] objection in a timely fashion' or 'sit on [its] rights.'" See Knowledge Connections, Inc. v. United States, 79 Fed. Cl. 750, 759 (2007) (quoting Blue & Gold, 492 F.3d at 1314 (alteration in original)). For the foregoing reasons, the court finds that plaintiff has not waived its right to object to the solicitation.

3. Whether Plaintiff Was Prejudiced By Defendant's Conduct

For the purposes of this case, when evaluating whether plaintiff was prejudiced by defendant's conduct, the court uses a standard that lies between the standard articulated in Bannum, 404 F.3d at 1353 (a protester "must show that there was a 'substantial chance' it would have received the contract award but for the errors" (citing Info. Tech., 316 F.3d at 1319)), and that articulated in Weeks Marine, 79 Fed. Cl. at 35 (a "protester need only identify a non-trivial competitive injury capable of being redressed by judicial relief"). In addition to demonstrating a violation of regulation or procedure, to prevail in its bid protest in the circumstances of this case, plaintiff must demonstrate that, absent the error, it would have had a chance of receiving the contract award that is more than merely speculative. See supra Part II.A.

On December 18, 2007, Bill Loafman of Allied e-mailed Karen Harris that Allied's supplier had quoted a delivery time frame that did not comply with the solicitation and inquired as to whether the government knew of any other suppliers. AR

379. Ms. Harris responded on December 20, 2007 that the government "cannot hold up evaluation and award of this requirement until a decision is made about the alternate source." Id. Although it is true that Allied never directly asked for an extension of the solicitation deadline, Ms. Harris' reply offered plaintiff absolutely no reason to believe flexibility existed in the deadline for the submission of proposals. See id. By contrast, Pat Lynn of ILC e-mailed Ms. Harris on December 20, 2007 and asked if the government could extend the deadline to January 11, 2008. Id. at 381. After learning that Ms. Harris was out of the office, Pat Lynn contacted the contracting officer, Steve Allgeier, on December 20, 2007. Id. at 382. On December 21, 2007 Steve Allgeier informed Pat Lynn that "the solicitation ha[d] been extended as requested." Id. at 395. Although Ms. Harris had advised Mr. Loafman that the evaluation could not be held up for a decision regarding an alternate source for Allied, id. at 379, the contracting officer appeared more than accommodating to ILC, see id. at 395. The extension of the solicitation deadline to January 11, 2008, articulated in the e-mail to ILC on December 21, 2007, was first provided to the parties in the written form of Amendment 5 on February 11, 2008. Id. at 422.

According to defendant, "Amendment 5 did not give ILC an additional opportunity to revise its price, . . . [it] merely extended the deadline to submit revised prices from the December 2[8], 200[7] closing date provided in Amendment 4 to January 11, 2008." Def.'s Mot. 14-15. But this argument is specious. An extension of a deadline is, as a matter of fact, "an additional opportunity to revise . . . prices." Defendant further argues that "the record evidence suggests that Allied was offered a chance to revise its price proposal after the time for proposals closed and did not." Id. at 15. This argument is specious as well. The court is aware of nothing in the record that supports it.

Plaintiff argues that "Allied had no ability to reduce or modify its prices based on the manner in which Amendment 5 was communicated to Allied or the information in the amendment itself." Compl. ¶ 11. According to plaintiff's argument in breifing, it was in fact prejudiced by the error in the issuance of Amendment 5:

> [I]f Allied had known about Amendment 5 extending the bid closing date to January 11, 2008 it would have had the opportunity to look at our current back log and run various costing strategies based on the government's revised purchase estimates for the base year and the option years. Also, it would have provided Allied with the opportunity to resolve the PIHM Hose issue regarding our proposed source. Having this issue resolved would allow Allied to be confident that it would get timely receipts of the PIHM Hose for the option years. Also if Allied had adequate time to factor in both of these issues it would have provided the Plaintiff an

> opportunity to not only lower our base year price but also determine if option year pricing needed to be escalated.
>
> Additionally, Steve Pack, the President of Allied, was absent from the office, due to the Christmas holiday, during the period when the revised offer to Amendment 4 was prepared. . . . Mr. Pack typically is the final pricing authority on all major bids and proposals. . . . Mr. Pack also frequently cuts pricing on bid estimates based on his subjective determination of what it will take to be successful in winning the contract.
>
> Finally, there are many purchased components that are required to produce the Pigtail assembly. It is Allied's practice to follow up with vendors for better pricing up to the date bids are submitted. Allied also diligently looks for alternative vendors for products where we believe cost savings can be realized. On December 20, 2007 DSCR's e-mail directed Allied to respond to Amendment [4] by December 28, 200[7]. Considering most vendors were unavailable on Monday December 24, 2007 and obviously Tuesday December 25, 2007 that effectively left Allied with only two days, December 21, 2007 and December 26, 2007, to work on its pricing and seek better price quotes.

Pl.'s Mem. 10-11 (citations omitted). These statements, however, are based on a declaration by William Loafman, attached to plaintiff's Facts, that was not a part of the AR. See id.; Pl.'s Facts 7-8; Ex. 1 to Pl.'s Facts (Declaration of William Loafman). The court informed the parties that "absent a motion to supplement the [AR], properly supported, to which the other parties are given an opportunity to respond, the court will not consider material outside the AR, including the declarations of Andree D. Toon and William Loafman attached to the parties' briefing." Order of Apr. 9, 2008 (citing Emerald Coast Finest Produce Co. v. United States, 76 Fed. Cl. 445, 448-50 (2007)). No such motions have been presented and, as a result, the court does not rely on arguments based on matters not contained in the AR.

However, even if the court were to credit the claims in Mr. Loafman's declaration, they would not support Allied's contention that Allied would have submitted a bid, if it had timely received Amendment 5 on or before January 11, 2008, that would have had more than a speculative chance of receiving the contract award. The court is in agreement with defendant-intervenor on this point: "Allied relies on nothing more than pure conjecture to allege that it has been prejudiced by DSCR's actions." Def.-Int.'s Mem. 12. Allied does not describe how it would have revised its proposal in response to timely receipt of Amendment 5. See Compl. passim.

Moreover, Allied's offer, submitted on December 27, 2007, did not comply with the terms of the solicitation. See AR 32, 182. The solicitation called for a delivery time of 216 days after the order was received, id. at 32, and Allied's offer was based on a 730-day delivery time, id. at 182. Allied tendered an alternate offer that would comply with the 216-day delivery requirement, but the alternate offer called for the use of another, unapproved, supplier. Id. at 182. When Allied itself was approved as a supplier of the adapter subassembly for the solicitation by the ESA, the ESA stated that Allied could not make any variation in the sources used to manufacture the adapter subassembly. Id. at 372. Despite the previous prohibition on changing suppliers, the government allowed Allied to revise its solicitation based on an alternate supplier. Id. at 397, 420-22, 434. Allied's efforts to revise its solicitation lasted far beyond the extension of the solicitation deadline to January 11, 2008. See id. at 420. Allied never asked to revise its pricing after it submitted its alternate proposal and there is no non-speculative evidence that Allied had not provided its best available pricing on December 27, 2007. See id. passim.

During oral argument on April 11, 2008, plaintiff's counsel argued that the increase in quantity by Amendment 4 to 1250 resulted in Allied's supplier being unable to deliver within the 216-day delivery time. Oral Arg. Tr. 16:5-15. According to the AR, however, Allied did not object to Amendment 4, did not state that Amendment 4 provided Allied with insufficient time to revise its pricing, and did not tie the inability of Allied's supplier to deliver within 216 days to the increase in quantity to 1250. See AR 379.

In his e-mail to Karen Harris on December 18, 2007, Bill Loafman never asked for an extension to submit Allied's proposal. See id. Nor did Allied object to Amendment 4 when it submitted its revised pricing on December 27, 2007, or in any of its correspondence with DSCR in January and February of 2008. Id. at 182, 400-19, 434. Allied also failed to object to its late receipt of Amendment 5 before the award of the contract to ILC. See id. passim. As stated by defendant, "as of February 11, Allied was on actual notice that ILC had received an extension to January 11, 2008 to provide its pricing. Mr. Loafman reviewed the amendment, signed it, and returned it." Def.'s Resp. 5; see AR 422, 434. Allied failed to take advantage of opportunities to object to Amendment 5 prior to the award of the contract and failed to request additional time to revise its prices. Def.'s Resp. 2-3. While the court has determined that Allied is not barred from bringing its protest by waiver, the court notes that Allied's behavior and the concerns it expressed after learning of Amendment 5 provide no contemporaneous support for its assertion in this bid protest that it viewed itself as injured by an inability to revise prices.

Plaintiff argues that because Steve Pack, Allied's president, was absent due to the Christmas holiday, he was unable to use his discretion to cut prices "based on his

subjective determination of what it will take to be successful in winning the contract." Pl.'s Mem. 11. The court agrees with defendant that the government should not be held responsible for Steve Pack's having taken a vacation when he believed the deadline for proposals was December 28, 2007. Def.'s Resp. 3 n.1. Furthermore, plaintiff argues that due to the Christmas holiday, after Amendment 4 was issued Allied was left "with only two days, December 21, 2007 and December 26, 2007, to work on its pricing and seek better price quotes." Pl.'s Mem. 11. However, even if Allied had been unable to work on pricing on December 22-25, it still had six working days "(December 18, 19, 20, 21, 26 and 27) to revise its pricing." Def.'s Resp. 4.

Also, and importantly, the price factor was considered along with the non-price factor of past performance in order to determine which proposal provided the best value to the Government. AR 48. The proposals were evaluated by weighing price and non-price factors equally. Id. As defendant-intervenor correctly states, "Allied fails to demonstrate how an opportunity to reduce its proposed price – or even an actual reduction in its proposed price – would result in Allied having an evaluated price that was sufficiently lower than ILC's price to overcome ILC's superiority with respect to ABVS scoring." Def.-Int.'s Mem. 13. Allied has failed to demonstrate that, absent the error, it would have had a chance of receiving the contract award that is more than merely speculative. For the foregoing reasons, the court finds that plaintiff was not prejudiced by defendant's error.

4. Whether Plaintiff Waived Count II of Its Complaint By Not Addressing it in Its Motion For Judgment on the Administrative Record.

Count II of plaintiff's Complaint alleges that "DLA has breached its duty of good faith and fair dealing." Compl. 4 ("By its arbitrary and capricious decision to ignore the clear requirements of CICA and the FAR [DSCR] has breached its duty of good faith and fair dealing it owed to Allied as a proposed offeror under the procurement."). Plaintiff makes an attenuated and perfunctory claim for bad faith. See Compl. 4-5. The subject of bad faith is not addressed at all in plaintiff's opening briefing. See Pl.'s Motion passim. In defendant's opening briefing defendant argued that it is entitled to judgment on Count II of plaintiff's Complaint. Def.'s Mot. 16-18. There is some discussion of Count II of plaintiff's Complaint in plaintiff's Response. Pl.'s Resp. 9. In defendant's Response, defendant asserts that Allied has waived Count II of its Complaint because it did not address Count II in its Motion. Def.'s Resp. 6. Even if Count II of plaintiff's Complaint is not waived, an allegation of bad faith requires the protestor to overcome the presumption that the government acted in good faith. Galen, 369 F.3d at 1330 (citing Info Tech., 316 F.3d at 1323 n.2). To overcome this presumption, "'the proof must be almost irrefragable,'" id. (quoting Info. Tech., 316 F.3d at 1323 n.2), meaning "clear and

convincing evidence" is required, id. (quoting Am-Pro Protective Agency, Inc. v. United States, 281 F.3d 1234, 1239-40 (Fed. Cir. 2002)). This standard of proof "has been equated with evidence of some specific intent to injure the plaintiff." Torncello v. United States, 681 F.2d 756, 770 (Ct. Cl. 1982). The factual predicate required for a showing of bad faith was not developed by plaintiff, see Pl.'s Mot. passim; Pl.'s Resp. 9, and plaintiff's Facts do not appear to be marshaled to support such a claim, see Pl.'s Facts passim. Therefore, the court GRANTS defendant's motion for judgment on the AR with respect to Count II of plaintiff's Complaint.

5. Whether Plaintiff is Entitled to Injunctive Relief

Defendant argues that "[e]ven if Allied were to succeed on the merits, it cannot demonstrate that it is entitled to a permanent injunction in this matter." Def.'s Mot. 18. In deciding whether to issue a permanent injunction, "a court considers: (1) whether, as it must, the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief." PGBA, LLC v. United States, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (citing Amoco Prod. Co. v. Vill. of Gambell, 480 U.S. 531, 546 n.12 (1987)). According to defendant, "Allied is not entitled to a permanent injunction because it failed to demonstrate success on the merits." Def.'s Mot. 18. Plaintiff, on the other hand, maintains that it is likely that plaintiff will succeed on the merits. Pl.'s Mem. 8-9. For a permanent injunction plaintiff must show "actual success" on the merits. Amoco Prod. Co., 480 U.S. at 546 n.12 ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." (citation omitted)). Here, plaintiff has not succeeded on the merits and therefore is not entitled to a permanent injunction.

III. Conclusion

For the foregoing reasons, plaintiff's Motion is DENIED and defendant's and defendant-intervenor's Motions are GRANTED. The Clerk of the Court shall enter judgment for defendant and defendant-intervenor. No costs.

IT IS SO ORDERED.

s/Emily C. Hewitt
EMILY C. HEWITT
Judge